IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL GEOFFREY PETERS, #2019190, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:17-CV-00595-RC |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Defendant. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Geoffrey Peters, an inmate confined in the Texas prison system, proceeding *pro se*, brought the above-styled and numbered lawsuit alleging various violations of his civil rights against various Defendants. The above entitled and numbered civil action was referred to United States Magistrate Judge John D. Love pursuant to 28 U.S.C. § 636. After a long procedural history, all that remains is Mr. Peters's claim pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendant Lorie Davis, Director of the Texas Department of Criminal Justice. On May 24, 2019, the Magistrate Judge issued his Report and Recommendation (Doc. No. 171), recommending that the Director's Motion for Summary Judgment (Doc. No. 147) be granted-in-part and denied-in-part. Specifically, the Magistrate Judge recommended that the Director's Motion be granted to the extent Mr. Peters alleges any claims against the Director in her individual capacity and seeks monetary relief, but denied in all other respects.

Both Mr. Peters and the Director have filed objections (Doc. Nos. 176 and 177) to the Report and Recommendation. The court reviews *de novo* the portions of the Magistrate Judge's

1

findings to which objections have been raised. 28 U.S.C. § 636(b)(1). Having reviewed the Magistrate Judge's findings and the parties' objections, the court **OVERRULES** the parties' objections (Doc. Nos. 176 and 177) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. No. 171) as the findings of the court.

## LEGAL STANDARD

The court reviews objected-to portions of the Magistrate Judge's Report and Recommendation *de novo*. *See* FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). A court conducting a *de novo* review examines the entire record and makes an independent assessment under the law. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## DISCUSSION

### I.  Director's Objections (Doc. No. 177)

The Director makes four specific objections to the Magistrate Judge's Report and Recommendation: (1) the Magistrate Judge did not give proper weight to TDCJ's interest in requiring Peters to follow the rules before being transferred; (2) the Magistrate Judge misstates the issue of the case; (3) the Magistrate Judge misstates the substantial burden standard; and (4) the Magistrate Judge should not have discussed alternative means of accommodation. (Doc. No. 177, at 6–8.)

#### a.  Deference to TDCJ's Expertise

The Director's first basis of alleged error argues that the court should have afforded greater weight to TDCJ's interest in limiting access to its Enhanced Jewish Services Program to only practicing Jews. (Doc. No. 177, at 6–7.) In his Report and Recommendation, the Magistrate Judge noted under *Holt v. Hobbs*,[1] "[p]rison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise." (Doc. No. 171, at 7, 12.) The Magistrate Judge recognized this standard and afforded TDCJ's opinions appropriate weight. Nonetheless, the Magistrate Judge also recognized that *Holt* does not entitle prison officials to "unquestioning deference." (Doc. No. 171, at 7.) Under the *Holt* standard, the court must look to the marginal interest in enforcing and the specific harms of granting specific exemptions in the *particular context* of the instant case before the court. *Holt*, 135 S. Ct. at 863–64. The Magistrate Judge addressed the Director's general concerns about cost, safety, and security, however, found that the Director failed to meet her burden of showing that enforcement of the policy at issue is the least restrictive means of achieving a compelling government interest in this case. (Doc. No. 171, at 13.) Accordingly, the Magistrate Judge gave appropriate weight to TDCJ's expertise when assessing their interest in enforcing their policy.

### b. Identifying the "Religious Exercise" at Issue

Next, the Director argues that the Magistrate Judge misstates the issues of the case. (Doc. No. 177, at 7.) Specifically, the Director argues that the Magistrate Judge incorrectly identified the religious exercise as maintaining a Kosher diet in accordance with Jewish law. Rather, the Director argues that the religious exercise at issue is transfer to the Stringfellow Unit, which has a Kosher kitchen. The Director further argues that transfer to the Stringfellow Unit is the only remedy sought by Plaintiff in his pleading and Step 1 and 2 grievances. (Doc. No. 177, at 3–5.)

---

[1] 135 S. Ct. 853 (2015).

Accordingly, the Director argues that Mr. Peters's claim to any other remedy would be unexhausted.

The Magistrate Judge correctly characterized the "religious exercise" in this case as "maintaining a Kosher diet in accordance with Jewish law." (Doc. No. 171, at 11.) RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Indeed, throughout his pleadings, Mr. Peters seeks transfer to the Stringfellow Unit. However, the underlying reason Mr. Peters seeks a transfer is because the Stringfellow Unit houses the Enhanced Jewish Services Program and a Kosher kitchen. Thus, Mr. Peters's underlying claim relates to the Kosher food provided at the Stringfellow Unit, not the mere act of transfer. While Mr. Peters's pleadings may be unartfully pled, as a *pro se* litigant, the court must afford these pleadings liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). While Mr. Peters characterizes the Director's denial of a Kosher diet to Mr. Peters as the Director's denial of his transfer to the Stringfellow Unit, Mr. Peters's pleading is sufficient to challenge the Director's denial of a Kosher diet to Mr. Peters.

Likewise, the Director's argument with respect to exhaustion is unpersuasive. The Prison Litigation Reform Act ("PLRA") requires, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to give prison "officials 'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). "[A] grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity

to address the problem that will later form the basis of the lawsuit." *Id.* at 517. Mr. Peters's grievances address the Director's denial of his transfer to a unit that has a Kosher kitchen. The Director argues that Mr. Peters claim is restricted to the remedy of transfer and that alternative means of accommodation are not properly part of this case. (Doc. No. 177, at 3–5.) The exhaustion requirement, however, is totally distinct from the remedy sought by a plaintiff. Indeed, a plaintiff must still exhaust administrative remedies even in cases where the relief sought (i.e. monetary damages) cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001)). Thus, Mr. Peters has properly exhausted the instant claim.

   c. **Substantial Burden Standard**

The court next turns to the Director's argument that the Magistrate Judge misstates the substantial burden standard. (Doc. No. 177, at 7–8.) The Director argues that TDCJ has not substantially burdened Mr. Peters by requiring him to complete correspondence courses in order to participate in the Enhanced Jewish Services Program. (Doc. No. 177, at 5–6.) In his Report and Recommendation, the Magistrate Judge correctly relied upon the Fifth Circuit standard articulated in *Adkins v. Kaspar*,[2] which provides that a government action substantially burdens a religious belief if "it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." (Doc. No. 171, at 6.) "[T]he effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Adkins*, 393 F.3d at 570. As the Fifth Circuit found in *Moussazadeh v.*

---

[2] 393 F.3d 559 (5th Cir. 2004).

5

*Texas Dep't of Criminal Justice*,[3] denial of religiously sufficient food where it is a generally available benefit constitutes a substantial burden on the exercise of religion. *Moussazadeh*, 703 F.3d at 793. The Director seeks to distinguish *Moussazadeh* by arguing the issue in *Moussazadeh* was whether an offender can be forced to pay for Kosher meals from the commissary, not whether an offender can be required to complete a correspondence course. (Doc. No. 177, at 7–8.) In the instant case, TDCJ continues to provide Kosher meals to offenders housed in the Enhanced Jewish Services Program at the Stringfellow Unit, however, refuses to provide Mr. Peters the same. Thus, Kosher meals are generally available to some offenders, but not to Mr. Peters. Thus, Mr. Peters allegedly must act in a way that violates his religious beliefs, by consuming non-Kosher food. Therefore, the Magistrate Judge correctly determined that the denial of Kosher food to Mr. Peters may constitute a substantial burden to his religious exercise.

### d. Alternative Means of Accommodation

Finally, the Court turns to the Director's claim that the Magistrate Judge should not have discussed alternative means of accommodation. (Doc. No. 177, at 8.) The Director argues that the court need only consider Mr. Peters request to be transferred to the Stringfellow Unit and that Mr. Peters has failed to suggest any means less restrictive than TDCJ's correspondence course policy to ensure that only practicing Jews can participate in the Enhanced Jewish Services Program. (Doc. No. 177, at 6.) Mr. Peters, however, does not have the burden of demonstrating that TDCJ's policy is the least restrictive means of ensuring that only practicing Jews participate in the Enhanced Jewish Services Program. Rather, that burden falls upon the Director. *Holt*, 135 S. Ct. at 863 (quoting 42 U.S.C. § 2000cc-1(a)). Moreover, when considering whether a policy is the least restrictive means, "when 'many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes that it must take a different course.'" *Tucker*

---
[3] 703 F.3d 781 (5th Cir. 2012).

*v. Collier*, 906 F.3d 295, 305 (5th Cir. 2018) (quoting *Holt*, 135 S. Ct. at 866). In his Report and Recommendation, the Magistrate Judge noted that several alternative accommodations may exist, however, the Director failed to offer any persuasive reasons why TDCJ should take a different course. (Doc. No. 171, at 13–14.) Accordingly, the Magistrate Judge properly considered alternative means of accommodation.

Accordingly, the Director's objections (Doc. No. 177) are **OVERRULED**.

### II. Mr. Peters's Objections (Doc. No. 176)

Mr. Peters's objections focus upon parts of this lawsuit that have already been dismissed by the court. Specifically, Mr. Peters argues that he has produced sufficient evidence of his denial of education, misappropriation of legal mail, misappropriation of inmate trust funds, and medical neglect claims. (Doc. No. 176, at 1–3.) Mr. Peters argues that allowing this case to proceed only on RLUIPA claims is merely a "bandaid" being placed over what Mr. Peters alleges is a large political corruption and racketeering conspiracy orchestrated by the State of Texas and corporate co-conspirators. (Doc. No. 176, at 3–6.) Mr. Peters also argues that he is entitled to punitive damages because he filed this lawsuit concurrent with these other claims. (Doc. No. 176, at 1.) Mr. Peters's objections are not responsive to the Magistrate Judge's Report and Recommendation (Doc. No. 171). Rather the other portions of this lawsuit that Mr. Peters complains about have already been dismissed by this court. (Doc. No. 107.) To the extent Mr. Peters disagrees with the court's prior order, these issues must be taken up on appeal after the entry of Final Judgment in this action.

Accordingly, the Mr. Peters's objections (Doc. No. 176) are **OVERRULED**.

### CONCLUSION

Having made a *de novo* review of the objected-to portions of the Report and Recommendation (Doc. No. 171), the court finds, for the reasons explained above, that the parties' objections (Doc. Nos. 176 and 177) should be **OVERRULED** and the Magistrate Judge's Report (Doc. No. 171) is **ADOPTED** as the findings and conclusions of the court. The Director's Motion for Summary Judgment (Doc. No. 147) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the Court **ORDERS** that the Director's Motion be **GRANTED** to the extent Plaintiff Mr. Peters alleges any claims against the Director in her individual capacity and seeks monetary relief. The Court **ORDERS** that the Director's Motion be **DENIED** in all other respects.

So **ORDERED** and **SIGNED** **June 23, 2019.**

_____
Ron Clark, Senior District Judge